UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DONOVAN G. DAVIS, JR.,

    Petitioner,

v.    Case No:  5:20-cv-551-Oc-39PRL

WARDEN, FCC COLEMEN-LOW,
et al.,

    Respondents.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Through counsel, Petitioner, Donovan Davis, Jr., a federal inmate, filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1; Petition). In his sole ground, Petitioner asserts:

> Respondents are in violation of the Eighth Amendment by failing to exercise [their] statutory authority to reduce the population[] . . . to mitigate the severe risk posed by COVID-19, and by failing to take adequate safety measures—social distancing, hygiene, and medical treatment—to protect inmates during the COVID-19 outbreak.

See Petition at 2, 6. Petitioner's counsel also has filed an emergency motion for injunctive relief (Doc. 3; Motion), with a supporting memorandum of law (Doc. 4; Memo). In the Motion, Petitioner seeks an order directing Respondents to "de-densify the inmate population by making use of the home confinement

authority . . ."; to eliminate the requirement that an inmate have served a certain percentage of his sentence to qualify for home confinement; and to improve the conditions of confinement at Coleman-Low by providing cleaning and hygiene products and using empty housing units to achieve social distancing. See Motion at 1-2.

Petitioner was sentenced to serve 204 months in the Bureau of Prison's (BOP's) custody in 2015. See Case No. 6:14-cr-43-Orl-41DCI. Petitioner, who is thirty-nine years old, alleges he "suffers a variety of ailments" that have been identified as risk factors for contracting COVID-19, including obesity, hypertension, diabetes, and asthma. See Petition at 11. He contends Coleman-Low has "among the highest incidence per capita of staff infections in the BOP system," though he says there is "no reliable information . . . about the degree to which the infection has spread." Id. at 14.

On October 29, 2020, Petitioner submitted an "informal resolution form" to the BOP requesting that he be placed on home confinement. See Doc. 1-1. A correctional counselor responded that Petitioner does not qualify for home confinement because he has not served at least fifty percent of his sentence. Id.[1]

---

[1] Petitioner's projected release date is December 3, 2029. See Federal BOP Website, available at https://www.bop.gov/ (last visited November 16, 2020).

2

In his Petition, Petitioner asserts his correctional facility "is ill-equipped to … [handle] a COVID-19 epidemic." See Petition at 15. For instance, Petitioner explains inmates are not properly evaluated or treated when they report possible symptoms of COVID-19, and those without fevers are simply returned to the general population. Id. at 25-26. Additionally, inmates are oftentimes in close proximity to one another, share phones and computers, and do not have adequate cleaning supplies to disinfect common areas. Id. at 28. According to Petitioner, "[t]he only effective way to minimize the potential devastation from COVID-19 in BOP facilities generally and at FCC Low in particular is to downsize immediately the incarcerated population" and to implement aggressive virus-detection and prevention protocols. Id. at 21. In support of his Petition, Petitioner offers his own affidavit and the affidavits of three other inmates (Docs. 1-4 through 1-7). Petitioner and the other inmates generally aver the conditions at Coleman-Low are such that inmates are unable to properly distance from one another, lack sufficient cleaning supplies and soap, and do not receive timely medical treatment (for issues not related to COVID-19).

Petitioner seeks the same relief in his Petition as he does in his Motion: an order directing prison officials to "maximize appropriate transfers to home confinement for all appropriate inmates" regardless of the amount of time they have served in relation to their overall sentences. Id. at 35. Additionally,

3

Petitioner wants the Court to direct prison officials to ensure social distancing mandates are followed; provide cleaning supplies; require staff and inmates to wear personal protective equipment; conduct daily temperature checks; question inmates daily to identify those with symptoms of COVID-19; improve medical testing, treatment, and quarantine protocols; and improve communication about risks and safety procedures. Id. at 36-38.

Significantly, Petitioner does not seek "compassionate release" under 18 U.S.C. § 3582(c)(1)(A).[2] Nor does he challenge the length of his sentence or seek release from BOP's custody. In fact, in his Memo in support of his Motion, Petitioner clarifies he "is not seeking to modify his sentence or be released from custody, as in-home confinement inmates remain in the custody of the BOP." See Memo at 2. Rather, Petitioner challenges the BOP's "categorical[] den[ial] [of] requests by those [including himself] who have served less than 50% of their sentence, irrespective of COVID-19 vulnerability." Id. at 5.

The relevant statutory provision provides as follows:

> **(2) Home confinement authority.**-- The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of

---

[2] A request for compassionate release must be brought before the sentencing court. Petitioner was sentenced by the United States District Court for the Middle District of Florida, Orlando Division. A review of Petitioner's criminal docket shows he has not moved for compassionate release. He has, however, filed a motion to vacate his sentence under 28 U.S.C. § 2255. See Case No. 6:14-cr-43-Orl-41DCI (Doc. 447); Case No. 6:20-cv-1037-Orl-41DCI (Doc. 1).

4

> the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2). In response to COVID-19, Congress expanded the BOP's home confinement authority as part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The relevant section provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, § 12003(b)(2).

Petitioner is not entitled to the relief he seeks under § 2241. While Petitioner may dispute the BOP's response to his "informal resolution," the BOP has exclusive jurisdiction to decide where to house prisoners, including home confinement. See 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.");[3] United States v. Calderon, 801 F. App'x 730,

---

[3] While the sentencing court can recommend that a prisoner be placed in a particular "type of penal or correctional facility," the decision whether to

5

731-32 (11th Cir. 2020) (holding a district court lacks jurisdiction to grant a request for home confinement under the Second Chance Act). See also McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989) ("[I]nmates usually possess no constitutional right to be housed at one prison over another.").

District Courts that have addressed this issue uniformly conclude the CARES Act does not vest district courts with authority to direct the BOP to place prisoners in home confinement or to review or override the BOP's decisions denying such requests. See, e.g., United States v. Alvarez, No. 19-cr-20343-BLOOM, 2020 WL 2572519, at *2 (S.D. Fla. May 21, 2020) ("While the CARES Act gives the BOP broad discretion to **expand** the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision." (emphasis in original)); United States v. Phillips, No. 616CR198ORL28GJK, 2020 WL 2219855, at *1 (M.D. Fla. May 7, 2020) ("The CARES Act did not remove the exclusive authority of the BOP to designate the place of an inmate's confinement."); United States v. Daniels, No. 4:08-CR-0464-SLB, 2020 WL 1938973, at *2 (N.D. Ala. Apr. 22, 2020) ("[U]nder the CARES Act, the BOP, through the Attorney General's

---

place a prisoner in home confinement rests with the BOP. See 18 U.S.C. § 3621(b)(4)(B).

6

delegation, retains the 'exclusive authority and sole discretion to designate the place of an inmate's confinement,' including home confinement."). See also Haymore v. Joseph, No. 3:20CV5518-MCR/MAF, 2020 WL 6587279, at *6 (N.D. Fla. Sept. 21, 2020), report and recommendation adopted sub nom. Haymore v. Warden Joseph, FPC Pensacola, No. 3:20CV5518-MCR/MAF, 2020 WL 6581975 (N.D. Fla. Nov. 9, 2020) (same) (citing cases); United States v. Buck, No. CR 14-00227-KD-B, 2020 WL 3490609, at *6 (S.D. Ala. June 26, 2020) (same).

While Petitioner styles his action as one for relief under § 2241, he primarily challenges the conditions of his confinement, asserting the BOP, in general, and Coleman-Low, in particular, effectively are subjecting inmates to conditions that offend basic Eighth Amendment principles. Indeed, in his Memo in support of his Motion, Petitioner cites and discusses Eighth Amendment deliberate indifference precedent, including a recent Eleventh Circuit opinion vacating entry of a preliminary injunction in favor of "medically vulnerable" pretrial detainees who claimed they were uniquely at risk of contracting COVID-19 at Miami's Metro West Detention Center. See Memo at 3, 6 (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994); Swain v. Junior, 961 F.3d 1276, 1280-81 (11th Cir. 2020)). Petitioner claims the BOP's "failure to make prompt use of [its] authority [under the CARES Act] to protect the lives of vulnerable inmates is tantamount to deliberate indifference." Id. at 6.

The fundamental purpose of a habeas proceeding is to allow a person in custody to attack the legality of that custody, and the "traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). In contrast, when a prisoner claims he is confined in conditions that pose a substantial risk of serious harm to his health, the claim is properly raised in a civil rights action. The Supreme Court distinguished between the two actions as follows:

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus . . . and a complaint under the Civil Rights Act . . . . Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a [civil rights] action.

Muhammad v. Close, 540 U.S. 749, 750 (2004) (internal citations omitted). See also Wilson v. Williams, 961 F.3d 829, 838 (6th Cir. 2020) ("[C]onditions of confinement claims seeking relief in the form of improvement of prison conditions or transfer to another facility are not properly brought under § 2241."). To the extent Petitioner challenges the conditions of his confinement at Coleman-Low and seeks relief to improve those conditions, § 2241 is not the correct avenue through which to proceed. As such, the Petition is due to be dismissed without prejudice subject to Petitioner's right to pursue other

8

avenues of relief that may be available to him.[4] Given the Petition is due to be dismissed, Petitioner fails to demonstrate he is entitled to injunctive relief, and his Motion is due to be denied.

Accordingly, it is

**ORDERED:**

1.   This case is hereby **DISMISSED without prejudice**.

2.   Plaintiff's emergency motion for temporary restraining order or preliminary injunction (Doc. 3) is **DENIED**.

3.   The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of November 2020.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record

---

[4] For instance, to the extent Petitioner intends to pursue a claim for the denial of medical care for his various health issues, such a claim should be raised in a <u>Bivens</u> action after properly exhausting administrative remedies. See <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). The Court takes no position on whether a claim for deliberate indifference to the risks associated with COVID-19 is cognizable under <u>Bivens</u>.